## NUISANCE—JURISDICTION—MUNICIPAL CORPORATION.

[Portage Circuit Court, November Term, 1889.]

Woodbury, Laubie and Frazier, JJ.

\*Grant B. Turner Manufacturing Co. et al. v. Holly Manufacturing Co. et al.

1. Continuing Nuisance and Damage—Equity Jurisdiction.

Where full, adequate and final damages for a nuisance and injury, causing material and substantial damages, as for unlawfully taking water from a water-power stream, cannot be recovered in a single action at law, and plaintiff would be obliged to maintain actions periodically to recover for such injuries, and to commence an action every twenty-one years to prevent the operation of adverse user against his rights, equity will take jurisdiction and grant the necessary relief without requiring plaintiff to first exhaust his remedy at law.

2. Rule Applied—Injunction Allowed.

The owners of a manufacturing plant on the banks of a stream of water, for the operation of which dams have been erected to supply water power to operate extensive machinery, are entitled to an injunction to restrain a water-works company, organized for profit and selling water to citizens, railroads and manufacturing companies, from taking water from a contributory stream in such quantities as to reduce the supply at the manufacturing plant below the amount required to operate the machinery.

3. Rule of Paramount Necessity not Applicable.

The rule that a city would be justified in taking water from a stream for domestic purposes under the law of paramount necessity, does not apply where a foreign corporation takes such water, makes merchandise of and sells it to citizens, manufacturers and railroad companies, especially where there are other sources from which the necessary supply could be had.

4. Order Should be Subject to Modification and Extension.

Where plaintiffs, in the action above referred to, have a right to all of the water in such tributary stream, but for their present necessity use only a portion thereof, the order giving the defendants the excess over that amount should not be a final order but one which may, upon thirty days notice to defendants and motion by plaintiffs, be modified or extended as future conditions may require.

5. Costs on Appeal by Both Parties—Divided.

Where both parties appeal from a judgment of the court of common pleas, and the circuit court makes substantially the same order as was made in the court below, each party should pay his own costs in the circuit court; and the plaintiff, judgment having been in his favor in the court of common pleas, should recover his costs in that court.

Appeal.

Woodbury, J.:

This is a case which has been tried upon evidence and submitted. We have given this case considerable consideration and have examined and read through the authorities that have been presented; those that were here and some that were not here, a few that we had to send for.

I shall not undertake to review the evidence in the case, nor will I undertake to review all the authorities which have been cited. Our time is limited, and, therefore, it is necessary that I should be brief in what I have to say in regard to the case.

The proof shows that the plaintiffs in the case are the owners of the several properties described in their petition, upon Cuyahoga river;

---

\* This case never went beyond the circuit court.

that they have upon the stream the several mills, furnaces and tile works, which they describe in their petition, situated upon Cuyahoga river; that they have dams across the river, thereby creating water-power for the running of their several mills; and I may say we find the same in regard to the Milbank property set up in the petition of Joseph Milbank, co-plaintiff, and also in regard to the property of the plaintiffs owned at Munroe Falls: that they have those mills and the machinery consisting of a large amount in the different mills; and that the same are run by this water-power. That at the ordinary stage of water it requires all the water of Cuyahoga river to carry their machinery ; and that at that it is not quite sufficient; so that at such times —I mean at the ordinary stage of water in the river—there is no more than, nor is it quite sufficient, to run all of their machinery.

We also find that Plum creek is a tributary of Cuyahoga river, situated above, all coming into these mills, and that its waters, united with the other waters of Cuyahoga river, constitute that water-power of these different mills.

We also find, as charged in plaintiff's petition, that the defendants have constructed waterworks upon Plum creek, near where it empties into Cuyahoga river, and have commenced taking water from Plum creek. That they have entered into a contract with the incorporated village of Kent, by which they have bound themselves to put in waterworks of sufficient capacity to furnish 1,500,000 gallons in a day of 24 hours; and that in pursuance of that contract the defendants have erected the waterworks with a capacity at least of a 1,000,000 gallons a day and that they have been taking from Plum creek from 245,000 to 260,000 gallons a day. At the commencement or start it was somewhere in the neighborhood of 60,000 gallons in 24 hours. That the capacity of Plum creek at its ordinary stage is one hundred and twenty-five and seven-tenths cubic feet a minute; and we find that the water which is thus taken by the defendants from Plum creek is a material injury and a substantial damage to the plaintiffs.

It is claimed, and perhaps this I should pay a little attention to in the short time that we have, that the water which is thus taken by the defedants from Plum creek,— this is claimed by defendants,—is substantially all restored, either to Plum creek or Cuyahoga river; and much testimony has been introduced upon this subject.

When we come to look at the evidence in the case, it shows, as I have already said, that the ordinary flow of Plum creek is 125.7 cubic feet in a minute. Since the defendants have been taking water from Plum creek, the tests which have been made show that the water running over the weir prepared for testing, was cut down to from 40 to 55 or 57 cubic feet in a minute. This, the evidence shows, was the condition of things in September, and also in October.

While there is really no controversy in the evidence as to the amount of water which was passing through Plum creek before the taking of the water by the defendants, as I have said, there was much evidence introduced upon both sides bearing upon the question whether this was returned to Plum creek or to Cuyahoga river.

It has been shown that some portion of it is used by families for domestic purposes, some portion of it used in motors—I think there being five motors,—and another portion of it used by the railroad companies, and still another portion of it used in watering lawns, sprinkling streets and the washing of pavements. These, of course, are all elements which

are to be considered, the amount, if any, which returns back either to Plum creek or to Cuyahoga river.

Judging from the evidence in the case, we are inclined to the opinion that the larger portion of the water taken from Plum creek by the defendants is used by the railroad companies, in fact, the witness who seems to know most about it and has done most of the pumping of the water for the defendants, testifies that up to the time when they commenced furnishing water to the railroad companies, that they furnished or pumped about 65,000 gallons in a day; but that when the railroad companies commenced taking water they pumped from 245,000 to 250,000 gallons in a day, thus showing, according to his evidence, that a large portion of the water that is being taken by the defendants from this stream is used by the railroad companies, and we think it is quite evident that a large portion of the water could not and does not go back either to Plum creek or Cuyahoga river.

In regard to the water which is used for domestic purposes, while there is conflict in the proof upon this subject, the witnesses on part of defendants testifying that it all, in some way or other, would go back, excepting what would be taken up by evaporation, yet the witnesses on the part of the plaintiffs testified that a large portion of the water which would be used for domestic purposes would be taken up and carried away by evaporation and by steam; so that but a small portion of the water used for domestic purposes would be returned to the river. And another idea might be suggested in this connection, that prior to the time when the water was being taken by the defendants from this river or this stream, Plum creek, it is quite evident that all of the water used for domestic purposes in Kent was procured from other sources, perhaps largely from wells, and if this water, whether it was used in that city or village, for domestic purposes returned to the river, when drawn from the earth, from wells and from other sources, then the taking of the water from the river would tend, unless it will return, to diminish the flow of the river.

The water which is used in the motors, probably a considerable portion of it, returns to the river or to Plum creek, excepting what might be gone or lost by evaporation. But at all events, we are satisfied from the evidence that a large portion of the water that is taken by the defendants is not returned either to Plum creek or to Cuyahoga river.

It is claimed also, on the part of the defendants, that they have increased the amount of water in Plum creek by the excavation of the pond or reservoir in which they store their water, and also by the sinking of wells, artesian wells, or flowing wells, or driven wells. The proof in regard to the wells is, that while they were excavating for the reservoir they drove four or five of these wells; two of them only furnished or procured water. As to two of them the proof is, that the water rose in the pipes two feet above the surface, or perhaps a little more, and flowed over: that one of those pipes yet remains in that reservoir, but the top of the pipe is still under water, perhaps a foot; and that also, in the excavation, some springs were found, after running down into the gravel, that run into this reservoir; and we now have the question whether any additional water of any amount is thus furnished by the opening or excavating from the reservoir and by this driven well. We are satisfied that at least while the water stands a foot above the top of that pipe that there is no reasonable ground to suppose that there is any

reasonable flow of water from that source. While it might be when the water is reduced down even with the level of the top of the pipe that there would be a flow of water, yet when the water stands in the pond or reservoir to the height of the source of the water going through the pipe that then it would not flow, and so with the water which is claimed on the part of the defendants to have been opened up by the excavating of the reservoir; so long as the water stands in the pond level with the height or source of that coming in, that is through the gravel, there would naturally be no flowage, but with these taken out and reduced so there would be no head then the water might flow. But we are satisfied there is no substantial amount of water furnished to the company through that source in the present state of things. And I may say to another item that I should have spoken of before, that the plaintiffs have been in the enjoyment and use of their water power for in the neighborhood of fifty years, and all of them for more than twenty-one years next prior to the commencement of this action.

This brings us to the questions of law which are raised by counsel as to the relief, if any, which may be granted in this action.

It is insisted on the part of the defendants in the case that a court of equity will not entertain jurisdiction until the rights of the plaintiffs have been determined at law. Many authorities have been cited upon this question ; and we have examined many. Perhaps the exact question has never been definitely settled by the Supreme Court of the state of Ohio and yet we have several decisions in this state in which the rule substantially as is announced in the elementary books and in many of the other states is announced. The first case that I will call attention to bearing upon this question is Goodall v. Crofton, 33 Ohio St., 271 [31 Am. Rep., 535], in which is mentioned the case cited by counsel, in McCord v. Iker, 12 Ohio, 388, that is the first case in the state announcing the principle as cited, and the court say in the opinion on page 275:

"In this state, however, we understand the rule to be, that a court of equity will only interfere to restrain an alleged nuisance, when the mischief to the plaintiff's property, or rights in his property, are irreparable, and there is no adequate remedy at law to make reparation. Although the restraint of an established nuisance 'is an admitted ground of equity jurisdiction,' that branch of the law 'will carefully abstain from interference where the injury will support an action at law, unless the party seeking such aid brings himself within the clearest principles of equitable relief.' McCord v. Iker, 12 Ohio, 388. To the end that right may be done and injury prevented, courts having jurisdiction in equity will determine each case, as it arises, upon its own facts and circumstances. When, from the nature of the case, and the right claimed to be infringed, no adequate remedy can be had in the courts of law, equity will entertain the action, where the things ought to be prohibited is not a nuisance *per se*, but may, under some circumstances, prove so, the court will not interfere without a previous trial at law."

Now, Crawford v. Rambo, 44 Ohio St., 279 [7 N. E. Rep. 429], on page 287, give the rule: "As to whether the plaintiff is entitled to relief upon his second cause of action, it is sufficient to say, that in a proper case, on a final hearing, a decree may be entered for the abatement of a nuisance. But it necessarily depends upon a variety of circumstances, whether such a decree will be entered. In the first place equity requires that the plaintiff shall have acted with promptness in

objecting, and in taking steps to enforce his objection, upon receiving notice of the defendant's structures and erections which are sought to be abated, if the circumstances are such that the defendant would be unnecessarily prejudiced by the plaintiff's delay; and the injury must be of a substantial and permanent nature," and "it is sufficient, however, in this regard, that the damages are of such constant and frequent recurrence, that no adequate compensation can be made thereby. Wood on Nuis., Sec. 778."

These two cases substantially settle the rule in Ohio when the court of equity may intervene for the purpose of abating a nuisance. I may say that this question which we are now discussing, was before us recently in the circuit court in Columbiana county. That was a case where the waterworks company at Salem had appropriated a large spring, adjoining the plaintiff's land, and the spring ran down across the plaintiff's premises: I said that the waterworks company had appropriated; in this I mis-spoke, as the company had purchased of the owner of the spring the spring with a small piece of land surrounding it and then went forward and laid their pipes from the spring down across the lands of plaintiff. By the laying of the pipe from the spring it took all the water from the spring away from the plaintiff's premises down to the city of Salem. The company had appropriated, under the statutes, the right to lay the pipe across the plaintiff's premises. The plaintiff brought an action to enjoin them from taking water from the spring and not permitting it to run and flow across his farm; and upon a full hearing and examination of the case, of the authorities in that case, we held that it was a case where a court of equity would intervene and would enjoin the company from thus diverting the water and stopping it from running across his premises as it had before. That was a case in some of its incidents something like this. There, as in this case, the defendants had entered into a contract to supply water to the city of Salem; they had contracted to furnish spring water and at the time of the commencement of the action they had laid their pipes, having, by a proceeding in the probate court, attempted to appropriate the right to lay the pipe, but, as we held, not the right to take the water from the land of the plaintiff and convey it to Salem, there to be used by the citizens of that place.

The question is raised here, and a case is cited that was decided by the Supreme Court of Pennsylvania. That case we did not then have before us. The doctrine laid down in that case by that court was this: This was a case where an action was brought against the city of Philadelphia about taking water out of the Schuylkill river so much that it destroyed navigation. This action was brought to recover damages. A question seems to have incidentally come up in the case, but which the court did not fully consider. In that they say this, that it was conceded on trial that upon taking water for the citizens for domestic purposes no restriction could be placed by legislation or grant, and none was placed. If it could have been shown that it was this supply for domestic purposes only, which occasioned the insufficiency for navigation, then the law of a paramount necessity would have existed, and have brought into play the doctrine of riparian rights, and justified the taking. But this did not appear and was not the fact. Nor was it denied that if the drought had been so severe as to have been incapable of mitigation by the use of any means to keep the navigation open, the defendant would not have been liable. That is all said in this case.

except in the syllabus: The use of the water for the citizens for domestic purposes could not be restrained by legislation or grant.

For such purposes the law of paramount necessity would have justified the taking. There is no authority cited here by the court, but when we come back to see the points made by counsel we find that there are two cases cited by counsel for plaintiff in error; one, I think, is 2 Denio. An action was brought against the city of New York to recover damages for destruction by water and against the mayor of New York for the destruction of buildings to prevent the spreading of fire. It was held that outside of the statute and at common law there could be no recovery, because it was one of those cases of inevitable necessity. So, perhaps, if that is the rule which the Supreme Court of Pennsylvania mean to follow, then, in order to apply that rule where water is taken for domestic purposes by a city, that there must be a necessity for thus taking the water. As the Supreme Court say in this case, no such necessity existed; and what is quite evident from the reading of the opinion, together with the authority which is cited by counsel, that to sustain the doctrine that it would be necessary and that the city would be justified in taking it for domestic purposes if it were necessary to do so, but not otherwise.

But, in this case, the rule does not apply, for the reason that it is not the village of Kent that is taking this water, but it is the defendants' foreign corporation, that is taking this water and making merchandise of it by selling it to the citizens and railroad companies and others, and manufacturers of the village of Kent. And, in this case, I may say further, that as to the necessity to take it, even for domestic or manufacturing purposes, this contract which has been offered in evidence in this case shows that there are three other sources from which this water may be taken, and that the defendants have the liberty to take and furnish the water under their contract from either one of those places : I would say the defendants, under their contract, are at liberty to take their water from either one of the three other sources or places ; so that the necessity of taking the water from Plum creek for this purpose is not apparent and does not appear in this case.

I think I need not take up more time in the review of the cases bearing upon this question. Then, perhaps, I should say something in regard to the question whether or not the plaintiffs have a remedy at law.

The proof in the case shows that this is a continuing nuisance or continuing injury and a continuing substantial damage, daily, monthly and yearly to these plaintiffs.

Now as I have read Crawford v. Rambo, *supra*, the circuit court uses this language: "It is sufficient, however, in this regard," that is, that there must be substantial and continuing injury, "that the damage are constant and frequent recurrence that no adequate compensation can be made thereby."

In the early case of Thayer v. Brooks, 17 Ohio, 489 [49 Am. Dec. 474], it is laid down that an action can be sustained in Ohio to recover damages for an injury occasioned by fire or water, although the act which occasioned the damage may have been committed in Pennsylvania.

The rule of damages in an action for a nuisance, is the injury actually sustained at the commencement of the suit ; and the court say, in the opinion—Birchard, J.: "Supposing the party liable at all, he was

only liable under any form of declaration, for the damages actually sustained prior to the commencement of the suit." So that the plaintiff in this case could not maintain an action to recover full and final damages for the injury which he had sustained, also all for the injury which they should sustain in the future. I may say, that we have examined, and we do not find that Thayer v. Brooks, *supra*, from which I have read, has been overruled by the Supreme Court of this state, and it is now at least, the settled law of Ohio upon that question. So, that, as I have said, the plaintiffs in their action would be compelled to commence actions daily, weekly or monthly as the case might be, for the purpose of recovering damages for their injuries; and they would also be compelled, in order to maintain their rights and to save the claim of the action of these defendants from getting into complete title by adverse user and they would be compelled to commence action at least once in twenty-one years for the purpose of maintaining their rights in this property. Then the rule which usually obtains, when a court of equity will take jurisdiction for the purpose of preventing a multiplicity of suits and a case of this kind, where at law they cannot recover adequate damages, or in other words, at law there is no adequate remedy, the court of equity will take jurisdiction. In a case of this character, if at law damages could be recovered, the uncertainty as to what future damages would be, the uncertain means and data which could be looked at as evidence bearing upon that question would be so uncertain and so unreliable that no court or jury could with any reasonable certainty determine what the future damages would be.

It might depend upon a great variety of circumstances. We think upon all of these grounds that we have a case here where a court of equity in Ohio, under Ohio decisions, would take jurisdiction. Now, the question arises—To what extent will this jurisdiction, in a case of this character, be extended? The rule seems to be well settled, not only in Ohio, but elsewhere, that in order to maintain this action the nuisance must create a material injury to the plaintiff and a substantial damage. If there is no injury or substantial damage, then, very likely, in Ohio, a court of equity would not take jurisdiction and would leave the party to bring his action at law, and under an action at law under Tootle v. Clifton, 22 Ohio St., 247 [10 Am. Rep. 732], he would be entitled to recover nominal damages at least, because it would be necessary for him to commence and maintain his action at law to prevent the claim of defendant from ripening into perfect title and taking away plaintiff's property. But, will a court of equity go beyond this, and will a court of equity go beyond where the proof in the case shows that the party as the plaintiff has been injured and grant full and final relief, or, should a court of equity stop and shut off its order as that the abatement of the nuisance would be to that extent that it should cease for the present at least to do injury or damage to the plaintiffs? And we think in this case, that while, as I have said, a court of equity, ordinarily, at least, would not assume jurisdiction unless material injury and substantial damage was done. Yet, when it is done and that is proven, at least to that extent in Ohio, a court of equity should take jurisdiction and act.

As I have said, the proof in this case shows that there the ordinary flow of Plum creek at its ordinary stage of water is 125.7 cubic feet in a minute, and at that stage of water, both in Plum creek and the Cuyahoga river, the plaintiffs in this action need all of the water, and that the taking away of any material portion of it is an injury to the

Manufacturing Co. v. Manufacturing Co.

plaintiffs, and, as, we have found, the taking away of this 125.7 cubic feet of water by the defendants is an injury to the plaintiffs; and so we find and order in this case, that the defendants be restrained from the taking of water, or in other words, that they shall permit to flow 125.7 cubic feet of water per minute, and that, we believe, is substantially the order which was granted by the court below, with this further proposition, however, which we think should be added, and that is, that the plaintiffs, upon 30 days notice to and motion to this court, may have the leave to apply for a modification of this order or extension of the order—either modification or extension.

Mr. Stuart: Which party?

The Court: Plaintiffs.

Mr. Stuart: Will the same right be reserved to the defendants?

The Court: That we have considered, and in our judgment it ought not to be allowed to the defendants. We only give this to the plaintiffs for this reason, that in the future the taking of the surplus water beyond that amount may produce an injury, a substantial injury and substantial damage to the plaintiffs, and if it shall do so in the future, then this order ought not to be final and they should have the right to apply upon it showing the order would be either modified or extended.

Mr. Stuart: The other side appealed in this lawsuit as well as us, and do not your Honors think they ought to pay some of these costs? They appealed before we did. We might have gotten along without appealing at all, and it is just the same decree as before.

The Court: We have modified the decree so far as to give them, in the future, should any change be made in the circumstances, the right to apply for modification or extension of the order.

Mr. Stuart: I think that in equity they ought to pay half the costs in the circuit court.

The Court: Upon consideration of this question, which we had not considered before the fact that both parties appealed and that the order which we have now made is substantially the same order made in the court of common pleas, and while the costs are probably not heavy, we think that probably under these circumstances it would be proper and just that each party should pay their own costs in this court, but that the plaintiffs should recover their costs in the court of common pleas.

Mr. Stuart: I have one more request to make of your Honors. I want to have this injunction made to take effect the first day of July.

The Court: We made it ninety days. We have considered that part of it.

Mr. Stuart: We have to do one of two things, either auction off our things, or find water elsewhere.

The Court: We will consider this. How long did you say you wanted?

Mr. Stuart: I do not want to put it any time where it is going to interfere with their water. All the witnesses put it along in the summer, but one, I think—put it in June. I would like until the first of July, but if the court thinks that is too long then I would like it—

The Court: We fixed it 90 days that they might do something or get a supersedeas if they want to. I am not speaking of that as fixing this matter at all. It will be remembered, however, that we except the water above the ordinary stage. We do not know how much that might affect you. Is there any objection to fixing this the first of June?

Mr. Wolcott: I presume not.

The Court: The order is of that character, that it is to take effect at such time, if they do not acquire the right from the plaintiffs within such time.

Mr. Holland: If the court please, I do not think we have any objection to fixing it at the first of May. I know there is a very dry time during June.

The Court: The first of June. You may take your order to the first of June.

Mr. Carpenter: I wish that the stenographer be instructed so he will not mention the petition of Milbank as answer and cross-petition.

The Court: Yes, make Milbank co-plaintiff; instead of crosspetitioner.